UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| 4202 Partners LLC, | Case No. 20-44238-NHL |
| Debtor. | |

--------------------------------------------------x

| | |
|---|---|
| In re | Chapter 11 |
| 4218 Partners LLC | Case No. 19-44444-NHL |
| Debtor. | |

--------------------------------------------------x

| | |
|---|---|
| In re | Chapter 11 |
| 175 Pulaski RLM LLC | Case No. 19-44445-NHL |
| Debtor. | |

--------------------------------------------------x

| | |
|---|---|
| In re | Chapter 11 |
| 4202 Ki Tov LLC | Case No. 20-40573-NHL |
| Debtor. | |

--------------------------------------------------x

## DEBTORS' AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION

4202 Partners LLC, 4218 Partners LLC, 175 Pulaski RLM LLC and 4202 Ki Tov LLC (collectively, the "Debtors"), hereby jointly propose the following Debtors' Amended Joint Chapter 11 Amended Plan of Reorganization (the "Amended Plan") pursuant to Title 11 of the United States Code (the "Bankruptcy Code") in connection with the above referenced Chapter 11 Cases (the "Bankruptcy Cases").  Although proposed jointly, the Amended Plan constitutes a separate Amended Plan for each Debtor for the resolution of outstanding Claims and Interests pursuant to the Bankruptcy Code.

# ARTICLE I.  OVERVIEW

These Chapter 11 Cases present unique challenges in attempting to pursue a redevelopment plan covering vacant commercial properties located in the Boro Park Section of Brooklyn.  In turn, the Amended Plan likewise contains unique features based upon the pooling of assets by each of the Debtors without substantive consolidation of the Bankruptcy Cases *per se*, either for purposes of sale or distributions under the Amended Plan.  At its core, however, the Amended Plan provides that the fee owning Chapter 11 debtors, 4218 Partners LLC ("4218") and 4202 Partners LLC ("4202"), will contribute their adjoining real property to construct an 11 story commercial and community facility building with accessory parking (the "Project") to be situated on both parcels.

The Chapter 11 Cases have not been substantively consolidated because the debt structure and equity interests in 4202 and 4218 are different.  Joseph Fischman owns a beneficial interest in both operating debtors, while Mr. Fischman's partners, Samuel "Shabsi" Pfeiffer and his wife Dina Krausz (the "Pfeiffers") are beneficial equity holders of only 4202 (which is jointly owned with Mr. Fischman through a stockholding company and co-debtor known as 4202 Ki Tov LLC).  The Pfeiffers have no interest in 4218 directly or indirectly through the other co-debtor, 175 Pulaski RLM LLC.

Nevertheless, going forward, the Amended Plan contemplates that Mr. Fischman and the Pfeiffers shall by mutual agreement arrange for the transfer of title and ownership to the respective properties to a new entity, which shall be organized as a New York limited liability company [likely to be named 4202-4218 Development LLC or a derivation thereof].  The new entity is hereby generally described throughout the Amended Plan as "NEWCO".  NEWCO shall either be the entity to own the Properties under the Option No. 4, or the borrower under the

Project Loan referenced herein, the proceeds of which shall be utilized, in large part, to address the outstanding mortgage debt held by 4202 Fort Hamilton Debt LLC ("Fort Hamilton Debt") and Maguire Ft. Hamilton LLC ("Maguire") (collectively, the "Secured Creditors").

As discussed at length below, the Amended Plan now allows for the auction sale of the Properties, if the Secured Creditors so elect, in which event the Debtors shall have certain overbid rights and the Secured Creditors shall have limited credit bid rights in the first instance.

## ARTICLE II.   DEFINITIONS

Unless the context otherwise requires, the following terms shall have the following meanings when used in this Amended Plan:

"**Administrative Expense Claim**" means any cost or expense of administering these Bankruptcy Cases, pursuing the Project or preserving and maintaining the Properties, allowable under Sections 503(b) and 507(a)(2) of the Bankruptcy Code.

"**Administrative Expense Claim Bar Date**" means the date set by the Bankruptcy Court in the Confirmation Order.

"**Allowed Claim**" means a Claim against the Debtors or any portion thereof (i) arising on or before the Effective Date as to which a proof of claim has been filed prior to the Bar Date and (a) no objection to allowance has been interposed before the expiration of the Claims Objection Deadline, or (b) an objection has been adjudicated by a Final Order to the extent such objection is determined in favor of the relevant holder, (ii) as to which the liability of the Debtors and the amount thereof are determined by a Final Order, (iii) that is expressly allowed by a provision of the Amended Plan, or (iv) that has been scheduled, and not designated as disputed, contingent or unliquidated, by the Debtors in the schedules filed with the Bankruptcy Court.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the Eastern District of New York having jurisdiction over the Debtors' Chapter 11 Cases.

"**Bankruptcy Fees**" mean all fees and charges assessed against the Debtors under Section 1930 of title 28 of the United States Code, together with all statutory interest due thereunder.

"**Bar Dates**" mean the various dates fixed by the Bankruptcy Court in the respective Chapter 11 Cases as the deadline for the filing of proofs of claims against each Debtor.

"**Business Day**" means any day other than a Saturday, Sunday and any day that is a legal holiday or a day on which banking institutions in New York, New York are required or authorized by law ow governmental action to close.

"**Causes of Action**" means any rights, claims, causes of action, damages and remedies existing in favor of any of the Debtors' estates relating to any pre-petition business transactions or other activity involving the Debtors or the Properties.

"**Claims Objection Deadline**" means the first Business Day which is at least thirty (30) days after the Effective Date, or such other date as may be established or extended by the Bankruptcy Court in accordance with the Amended Plan.

"**Confirmation Date**" means the date on which the Confirmation Order is entered on the docket maintained for each of these Chapter 11 Cases.

"**Confirmation Hearing**" means the hearing conducted by the Bankruptcy Court pursuant to Section 1128(a) of the Bankruptcy Code to consider confirmation of the Amended Plan, as such hearing may be adjourned or continued from time to time.

"**Confirmation Order**" means the Order confirming this Amended Plan pursuant to Section 1129 of the Bankruptcy Code.

"**Consummation**" means the occurrence of the Effective Date.

"**Disbursing Agent**" means jointly Goldberg Weprin Finkel Goldstein LLP and Isaac Nutovic, Esq.

"**Disclosure Statement**" means the Disclosure Statement relating to this Amended Plan, including all exhibits, attachments or amendments thereto, approved by the Bankruptcy Court as containing "adequate information" within the meaning of Section 1125 of the Bankruptcy Code.

"**Disputed Claim**" means any Claim that is listed in the Debtors' respective schedules as disputed, contingent or unliquidated with respect to which no Proof of Claim has been timely filed; or any Claim with respect to which an objection to the allowance thereof, in whole or in part, has been interposed within the applicable period of limitation fixed by the Bankruptcy Code or the Bankruptcy Rules.

"**Effective Date**" means at least fourteen (14) day after the Confirmation Date by which: (a) no stay of the Confirmation Order is in effect; (b) the New Project Mortgage Loan has been obtained pursuant to written commitment either to proceed with an overbid under the Fourth Option, or a refinancing under the other Options, or a cramdown; and (c) the New Value Contributions have been fully funded, but no earlier than May 30, 2021 subject to an extension of up to sixty (60) days upon consent of the Secured Creditors or for cause shown pursuant to Order of the Bankruptcy Court.

"**Equity Interests**" means the "equity security" as defined in Section 101(16) of the Bankruptcy Code.

"**Estates**" means the bankruptcy estates of each of the respective Debtors created under Section 541 of the Bankruptcy Code.

"**Exit Lender**" means a third party Lender, to be identified by the Debtors at least one (1) business day prior to the Confirmation Hearing, which has committed to either fund the overbid under the Fourth Option, or make the New Project Mortgage Loan consistent with the terms of the Amended Plan to the extent Option No. 4 is not pursued.

"**New Project Mortgage Loan**" means a mortgage loan secured by the Properties in the amount of at least $20 million dollars on commercially reasonable terms to be negotiated by the Debtors to the extent Option No. 4 is not pursued.

"**New Value Contributions**" means the total sum of $5 million dollars to be contributed by Mr. Fischman and the Pfeiffers to augment the monies available for confirmation and to comply with the absolute priority rule to the extent Option No. 4 is not pursued.

"**Priority Tax Claims**" means all Claims held by governmental units that are entitled to priority pursuant to Bankruptcy Code § 507(a). Priority Tax Claims includes all unpaid real estate taxes and other related charges owed to the City of New York relating to the Properties.

"**Professionals**" means the professionals employed by the Debtors in these Chapter 11 Cases.

"**Professionals' Fees Claims**" means the claims for compensation for services rendered by Professionals, as awarded by the Bankruptcy Court, in accordance with Sections 330 and 331 of the Bankruptcy Code.

"**Total Amended Plan Contributions**" means the monies to be deposited with the Disbursing Agent either from the proceeds of the auction sale if Option No. 4 is pursued, or by NEWCO if the other options or cramdown is pursued. The monies shall be use to pay the obligations and distributions required by this Amended Plan. The Total Amended Plan Contributions shall include the New Value Contributions and the proceeds of the New Project

Mortgage Loan, all of which shall be used to pay the Secured Claims pursuant to the terms hereof, all Administrative Expense Claims, Priority Tax Claims and Bankruptcy Fees, plus the amount of $100,000 to fund a *pro rata* distribution to General Unsecured Creditors as allocated herein (the "General Creditor Fund").  If Option No. 4 is employed, the Total Plan Contribution shall be generated from the sale proceeds resulting from a third-party sale, overbid or allowed credit bid as provided below.

"**Transfer Taxes**" means any and all stamp, real estate transfer, mortgage recording or other similar taxes or governmental assessments in the United States or imposed by any other governmental unit with respect to the transfer of the Properties or the New Project Mortgage Loan.

"**Unsecured Claim**" means a Claim that is not a Secured Claim or entitled to priority under the Bankruptcy Code.

### ARTICLE III.        UNCLASSIFIED CLAIMS

Pursuant to Section 1123(a)(1) of the Bankruptcy Code, the Amended Plan does not classify Administrative Expense Claims, Priority Claims or Bankruptcy Fees, all of which shall be paid in full as required by 11 U.S.C. §1129(a) (9).

3.1     **Administrative Expense Claims**.  Administrative Expense Claims consist of Professional Fees and any unpaid fees, costs and expenses incurred by the Debtors relating to the Project or otherwise incurred in maintaining the Properties during the Chapter 11 Cases.  To the extent that any such Administrative Expense Claims have not already been paid, each holder of an Administrative Expense Claim shall be paid in full from the Total Plan Contribution, however generated.

3.2    **Administrative Expense Claim Bar Date.**    A date establishing an Administrative Expense Claim Bar Date shall be included as part of the Confirmation Order, which shall be served upon all creditors and other parties-in-interest.  All requests for payment of Administrative Expense Claims that accrued on or before the Confirmation Date must be filed with the Bankruptcy Court by the Administrative Expense Claim Bar Date, except for Professional Fee Claims.  Any holder of an Administrative Expense Claim which fails to file a timely request for the payment of an Administrative Expense Claim shall be forever barred, estopped and enjoined from asserting such Administrative Expense Claim against NEWCO, the Debtors or the Properties.

3.3    **Professional Fee Claims.**  All requests for allowance of Professional Fee Claims and the Debtors' counsel must be filed no later than thirty (30) days after the Effective Date in accordance with 11 U.S.C. §330.  After notice and a hearing, the allowed amounts of such Professional Claims shall be paid by the Disbursing Agent from the Total Amended Plan Contributions upon entry of an appropriate Order of the Bankruptcy Court, however generated.

3.4    **Priority Tax Claims.**  All outstanding real estate taxes and related charges shall be treated as Allowed Priority Tax Claims, and, shall be paid in full from the Total Amended Plan Contributions, however generated, on or as soon as reasonably practicable after the Effective Date.

3.5    **Bankruptcy Fees**.  To the extent not otherwise paid, the Debtors shall pay all accrued Bankruptcy Fees, together with any interest thereon, from the Total Amended Plan Contributions on or before the Effective Date.  Bankruptcy Fees, together with any applicable interest, shall continue to be paid until the Chapter 11 Cases are closed by Final Decree, or otherwise converted or dismissed.

# ARTICLE IV.    CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

4.1    **Classification of Claims and Interests.**  This Amended Plan constitutes a separate Chapter 11 Amended Plan of reorganization for each Debtor, and the classification of Claims and Interests set forth herein shall apply equally to each of the Debtors as applicable. Certain of the Debtors may not have holders of Claims or Interests in a particular Class or Classes.

4.2    **Summary**.  The categories listed below classify Claims and Equity Interest against the Debtors for all purposes, including voting, confirmation and distribution pursuant to Sections 1122 and 1123(a)(l) of the Bankruptcy Code, as summarized below:

| Class | Designation | Impaired | Entitled to Vote |
|-------|-------------|----------|------------------|
| Class 1 | Fort Hamilton Debt | Yes | Yes |
| Class 2 | Maguire | Yes | Yes |
| Class 3 | General Unsecured Claims | Yes | Yes |
| Class 4 | Equity Interest Holders | Yes | No |

4.3    **Classification, Treatment and Voting.**

**Class 1 – Fort Hamilton Debt**

(a)    Classification: Class 1 consists of the claim of Fort Hamilton Debt.

(b)    Treatment: For purposes of the Amended Plan, and to facilitate a consensual confirmation under Section 1129(a), the Debtors hereby recognize and allow the claim of Fort Hamilton Debt for the full principal amount of $10 million without pre-petition interest or post-petition interest and without any other fees, costs or expenses.  Based upon the allowed amount of the claim, Fort Hamilton Debt shall have the option to choose from one of the following treatments:

(i)    Option No 1: Receipt of a cash payment of $5,000,000 equal to one-half (1/2) of the allowed amount of Fort Hamilton Debt's claim to be paid on the Effective

Date from the Total Amended Plan Contributions. The balance of the remaining 50% of the allowed amount of Fort Hamilton Debt's claim shall be paid pari-passu and at the same time with the payment of the Project Mortgage Loan in connection with a future refinancing of the Properties based upon execution of leases, a sale of the Properties or other payment event whenever such refinancing, sale or other payment event occurs. In the interim, Fort Hamilton Debt shall retain its lien on the property at 4202 Ft. Hamilton Parkway, on par or junior to the lien of the Exit Lender to the extent the Exit Lender permits and the Debtors shall use good faith efforts to obtain such authorization and consent from the Exit Lender.

(ii)    Option No. 2: Receipt of a cash payment equal to one half (1/2) of the allowed amount of Fort Hamilton Debt's claim on the Effective Date to be paid from the Total Amended Plan Contributions. The balance of the remaining 50% of the allowed amount of Fort Hamilton Debt's claim ($5,000,000), together with interest thereon to be computed as of the Effective Date at a rate of six percent (6%) per annum, shall be paid after full payment of the Project Mortgage Loan in connection with a future refinancing based upon execution of leases, a sale of the Properties or other payment event whenever such refinancing, sale or other payment event occurs. In the interim, Fort Hamilton Debt shall retain a junior lien to the Exit Lender to the extent the Exit Lender permits and the Debtors shall use good faith efforts to obtain such authorization and consent from the Exit Lender.

(iii)    Option No. 3: Receipt of a one-time cash payment equal to 75% of the allowed amount of Fort Hamilton Debt's claim ($7,500,000) to be paid on the Effective

Date in full satisfaction, release and discharge of all claims against the Debtors based on Fort Hamilton Debt's secured claim.

(iv)     Option No. 4:  The Amended Plan includes a new Option (referred to in the Disclosure Statement as the "Fourth Option") predicated upon a jointly coordinated auction sale of the Properties subject to the Debtors' overbid rights and the Secured Creditors' limited credit bid rights.  While the particulars of Option No. 4 have not yet been fully negotiated, under Option No. 4, if a bona fide third-party buyer emerges for the Properties, then that bona fide offer will be deemed the floor price, and the Debtors shall be entitled to make an overbid at the auction equal to the offer of the bona fide third-party buyer, plus pay $25,000, plus the Debtors' commitment to fund all other distributions due under the Amended Plan for Administrative Expenses, Priority Claims and the $100,000 General Creditor Fund.  The Debtors must also establish that they can reasonably close on the same terms and conditions of the bona fide third-party offer.  Conversely, if the Debtors do not make a timely Overbid, or cannot establish their financial wherewithal to close on the same terms and conditions, then the right to direct completion of the auction sale reverts to the Secured Creditors, which can either direct a sale of the Properties to the bona fide third-party with the proceeds to be distributed pursuant to the Amended Plan, or credit bid without restriction and thereafter fund the balance of the payments due to other creditors and administrative expenses under the Amended Plan.  All side must proceed in good faith throughout the auction process

Option No. 4, however, does not permit unlimited credit bid rights.  Instead, the Secured Creditors may only use a credit bid to match a bona fide third-party offer, not necessarily to bid up to the full amount of their claims.  This limitation on credit bidding

<u>is the proposed quid pro quo for subjecting the Properties to an immediate auction sale process</u>.

The Secured Creditors shall be consulted with respect to all aspects of the auction sale, including establishing a floor price that does not chill third party bids or otherwise undercut the basic premise that Option No. 4 is designed to allow for current value to be determined by a õfree marketö process.

In the event that Fort Hamilton Debt does not accept any of the options listed above, then the Debtorsø reserve the right to object and challenge some or all aspects of Fort Hamilton Debtøs claim and, thereafter, the Debtors further reserve the right to bifurcate such allowed claim as permitted by the Bankruptcy Code as between the secured and undersecured portions. The secured portion of the allowed claim as fixed by the Court shall be paid in full on the Effective Date, and the deficiency claim shall be paid by NEWCO as an unsecured obligation over a period of ten (10) years from the Effective Date in equal quarterly installments with interest equal to the ten (10) year treasury rate.

(c)     <u>Voting</u>: The Class 1 claim of Fort Hamilton Debt is impaired and eligible to vote.

**Class 2 – Maguire**

(a)     <u>Classification</u>: Class 2 consists of the claim of Maguire.

(b)     <u>Treatment</u>: For purposes of the Amended Plan, and to facilitate a consensual confirmation under Section 1129(a), the Debtors hereby recognize and allow the claim of Maguire for the full principal amount of $8.25 million without pre-petition interest or post-petition interest and without any other fees, costs or expenses. Based upon the allowed amount of the claim, Maguire shall have the option to choose from one of the following treatments:

(i)     Option No 1: Receipt of a cash payment of $4,125,000 equal to one-half (1/2) of the allowed amount of Maguire's claim to be paid on the Effective Date from the Total Amended Plan Contributions.  The balance of the remaining 50% of the allowed amount of Maguire's claim shall be paid pari-passu and at the same time with the payment of the Project Mortgage Loan in connection with a future refinancing of the Properties based upon execution of leases, a sale of the Properties or other payment event whenever such refinancing, sale or other payment event occurs.  In the interim, Maguire shall retain its lien on the property at 4218 Ft. Hamilton Parkway, on par or junior to the lien of the Exit Lender to the extent the Exit Lender permits and the Debtors shall use good faith efforts to obtain such authorization and consent from the Exit Lender.

(ii)    Option No. 2: Receipt of a cash payment of $4,125,000 equal to one half (1/2) of the allowed amount of Maguire's claim on the Effective Date to be paid from the Total Amended Plan Contributions.  The balance of the remaining 50% of the allowed amount of Maguire's claim ($4,125,000), together with interest thereon to be computed as of the Effective Date at a rate of six percent (6%) per annum, shall be paid after full payment of the Project Mortgage Loan in connection with a future refinancing based upon execution of leases, a sale of the Properties or other payment event whenever such refinancing, sale or other payment event occurs.  In the interim, Maguire shall retain a junior lien to the Exit Lender to the extent the Exit Lender permits and the Debtors shall use good faith efforts to obtain such authorization and consent from the Exit Lender.

(iii)   Option No. 3: Receipt of a one-time cash payment equal to 75% of the allowed amount of Maguire's claim ($6,150,000) to be paid on the Effective Date in full

satisfaction, release and discharge of all claims against the Debtors based on Maguire's secured claim.

(iv)     Option No. 4:  The Amended Plan includes a new Option (referred to in the Disclosure Statement as the "Fourth Option") predicated upon a jointly coordinated auction sale of the Properties subject to the Debtors' overbid rights and the Secured Creditors' limited credit bid rights.  While the particulars of Option No. 4 have not yet been fully negotiated, under Option No. 4, if a bona fide third-party buyer emerges for the Properties, then that bona fide offer will be deemed the floor price, and the Debtors shall be entitled to make an overbid at the auction equal to the offer of the bona fide third-party buyer, plus pay $25,000, plus the Debtors' commitment to fund all other distributions due under the Amended Plan for Administrative Expenses, Priority Claims and the $100,000 General Creditor Fund.  The Debtors must also establish that they can reasonably close on the same terms and conditions of the bona fide third-party offer.  Conversely, if the Debtors do not make a timely Overbid, or cannot establish their financial wherewithal to close on the same terms and conditions, then the right to direct completion of the auction sale reverts to the Secured Creditors, which can either direct a sale of the Properties to the bona fide third-party with the proceeds to be distributed pursuant to the Amended Plan, or credit bid without restriction and thereafter fund the balance of the payments due to other creditors and administrative expenses under the Amended Plan.  All side must proceed in good faith throughout the auction process

Option No. 4, however, does not permit unlimited credit bid rights.  Instead, the Secured Creditors may only use a credit bid to match a bona fide third-party offer, not necessarily to bid up to the full amount of their claims.  This limitation on credit bidding

is the proposed quid pro quo for subjecting the Properties to an immediate auction sale process.

The Secured Creditors shall be consulted with respect to all aspects of the auction sale, including establishing a floor price that does not chill third party bids or otherwise undercut the basic premise that Option No. 4 is designed to allow for current value to be determined by a õfreeö marketö process.

In the event that Maguire does not accept any of the options listed above, then the Debtorsø reserve the right to object and challenge some or all aspects of Maguireøs claim and, thereafter, the Debtors further reserve the right to bifurcate such allowed claim as permitted by the Bankruptcy Code as between the secured and undersecured portions. The secured portion of the allowed claim as fixed by the Court shall be paid in full on the Effective Date, and the deficiency claim shall be paid by NEWCO as an unsecured obligation over a period of ten (10) years from the Effective Date in equal quarterly installments with interest equal to the ten (10) year treasury rate.

(c)     Voting: The Class 2 claim of Maguire is impaired and eligible to vote.

**Class 3 – General Unsecured Claims**

(a)     Classification:   Class 3 is comprised of Allowed General Unsecured Claims against each of the Debtors arising prior the filing of the respective Chapter 11 petitions in each of the Bankruptcy Cases.

(b)     Treatment:  Each holder of a Class 3 Allowed General Unsecured Claim shall receive a *pro rata* payment from the General Creditor Fund of $100,000 to be paid from the Total Amended Plan Contribution on the Effective Date allocated $50,000 to 4202 and $50,000 to 4218.

(c)    <u>Voting</u>: Class 3 is impaired and eligible to vote on the Amended Plan.

**Class 4 – Equity Interest Holders**

(a)    <u>Classification</u>: Class 4 is comprised of the Equity Interests in each of the Debtors.

(b)    <u>Treatment</u>: All of Equity Interests shall be cancelled as of the Effective Date and shall not receive any distributions under the Amended Plan. Based upon their New Value Contributions, Joseph Fischman and the Pfeiffers shall become the new members of NEWCO (directly or indirectly) with Fischman to own 65% of the membership interest of NEWCO and the Pfeiffers to own 35% of the membership interest of NEWCO. The division between Fischman and the Pfeiffers of 65%-35% is predicated upon the fact that Fischman loaned approximately $2.0 million to the Pfeiffers over the years to assist the Pfeiffers in paying the costs associated with the 4202 Property.

(c)    <u>Voting</u>: Class 4 is impaired, and eligible to vote on the Amended Plan.

4.4    **Nonconsensual Confirmation.**    Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Amended Plan by an Impaired Class of Claims. The Debtors shall seek Confirmation pursuant to Section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests. The Debtors reserve the right to modify the Amended Plan to the extent, if any, that Confirmation pursuant to Section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

### ARTICLE V. MEANS FOR IMPLEMENTATION OF THE AMENDED PLAN

5.1    **Sources for Amended Plan Distributions.** The Debtors shall fund distributions under the Amended Plan, with the proceeds of the Overbid or New Project Loan in an amount up

to $20 million dollars plus the New Value Contribution of $5 million dollars for a total of $25 million dollars. From and after the Effective Date, NEWCO, as the Reorganized Debtors, shall have the right and authority without further order of the Bankruptcy Court to raise additional capital and obtain additional financing as it deems appropriate.

    5.2    **Restructuring Transactions**.

    1.    <u>New Capital Structure</u>. On the Effective Date, Fischman and the Pfeiffers together with any additional investors or partners (directly or through new holding companies) shall receive 100% of the equity interests in NEWCO, as the Reorganized Debtors, subject to the Secured Creditors rights under Option No. 4. The Properties shall vest in NEWCO, as the Reorganized Debtors free and clear of any pre-existing liens claims and interests except as provided for herein.

    2.    <u>Exit Lender</u>. Either under the Overbid or refinancing, as applicable, NEWCO as the Reorganized Debtors will become the borrower under the New Project Mortgage Loan to be issued by the Exit Lender on the best terms that can be negotiated by the Debtors. Distributions under the Amended Plan, plus certain Project costs will be financed by the New Project Mortgage Loan.

    3.    <u>Waterfalls</u>. To the extent applicable, from and after completion of the Project based on future refinancing following the leasing of Properties, sale or other payment event, the net proceeds after fees and expenses will be used as follows:

First, to repay the New Project Mortgage Loan plus any balances owed the Secured Creditors as applicable depending on what option is selected;

Second, to pay the balances owed to the Secured Creditors;

Third, to pay any residual debts of NEWCO; and

Fourth, the remainder, if any, will be split among the members of NEWCO.

5.3 **Vesting of Assets in the Reorganized Debtors.** Subject to the Secured Creditors' rights with respect to Option No. 4, and to the extent applicable or as otherwise provided in the Amended Plan or any agreement, instrument, or other document incorporated herein, all property in each Estate and any property acquired by any of the Debtors pursuant to the Amended Plan shall vest in NEWCO, as the Reorganized Debtors in accordance with this Amended Plan.

5.4 **Approval of New Project Mortgage Loan**. To the extent applicable, confirmation of the Amended Plan shall be deemed to constitute approval of the New Project Mortgage Loan (including all transactions contemplated thereby, and all actions to be taken, undertakings to be made and obligations to be incurred by NEWCO, as the Reorganized Debtors in connection therewith, including the payment of all fees, indemnities and expenses provided for therein), and authorization for NEWCO, as the Reorganized Debtors to enter into and perform their obligations thereunder.

To the extent applicable, the New Project Mortgage Loan shall constitute legal, valid, binding, and authorized obligations of NEWCO, as the Reorganized Debtors, enforceable in accordance with their terms. The financial accommodations to be extended to NEWCO, as the

Reorganized Debtors pursuant to the New Project Mortgage Loan are being extended, and shall be deemed to have been extended, in good faith, for legitimate business purposes, are reasonable, shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever, and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any other applicable non-bankruptcy law.

To the extent applicable, all of the mortgage liens and security interests to be granted by NEWCO, as the Reorganized Debtors in accordance with the New Project Mortgage Loan (a) shall be legal, binding, and enforceable liens on, and security interests in, the collateral granted thereunder, (b) shall be deemed senior liens, subject only to such liens and security interests of the Secured Creditors as may be permitted under the Amended Plan, and (c) shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any applicable non bankruptcy law.

5.5     **Organizational Documents**.  NEWCO, as the Reorganized Debtors shall enter into such agreements and amend their corporate governance documents to the extent necessary to implement the terms and provisions of the Amended Plan.  Without limiting the generality of the foregoing, as of the Effective Date, NEWCO shall be governed by a Certificate of Formation and an Operating Agreement to be filed with the Court as a supplement to the Amended Plan.  The New Organizational Documents will comply with Section 1123(a)(6) of the Bankruptcy Code.

5.6     **Exemption from Certain Transfer Taxes and Recording Fees**.  To the fullest extent permitted by Section 1146(a) of the Bankruptcy Code, the transfer of the Properties pursuant to this Plan and the making, issuance and delivery of the New Project Mortgage Loan

or any other construction financing shall be made and executed pursuant to, in contemplation of, or in connection with the Amended Plan or pursuant to: (1) the issuance, distribution, transfer, or exchange of any debt, securities, or other interest in the Debtors or the Reorganized Debtors; (2) the creation, modification, consolidation, or recording of any mortgage, deed of trust or other security interest, or the securing of additional indebtedness by such or other means; (3) the making, assignment, or recording of any lease or sublease; or (4) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Amended Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Amended Plan, shall not be subject to Transfer Taxes, and the appropriate state or local governmental officials or agents shall forego the collection of any such Transfer Taxes or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

5.7    **Preservation of Rights of Action**.  All Causes of Action are expressly preserved for the benefit of the Reorganized Debtors, including, without limitation, potential causes of action, claims and all equitable and legal remedies against the Secured Creditors, as may be applicable.

## ARTICLE VI.        PROVISIONS GOVERNING DISTRIBUTIONS

6.1    **Disbursements**. All distributions under the Amended Plan shall be made by the Disbursing Agent, who shall not be required to give any bond or other security for the performance of his duties hereunder.

6.2 **Objection Deadline**. Unless otherwise ordered by the Bankruptcy Court, the Disbursing Agent or any other creditors and party-in-interest shall have standing to object to any Claim (other than the New Value Contribution) by the Claims Objection Deadline.

6.3 **No Distribution Pending Allowance of Disputed Claims**. Notwithstanding any other provisions hereof, no payment or distribution shall be made with respect to any portion of a Disputed Claim unless and until all objections to such Disputed Claim are resolved by stipulation or Order of the Bankruptcy Court.

6.4 **Delivery of Distributions**. Distributions to holders of Allowed Claims shall be made: (1) at the addresses set forth on the respective proofs of Claim filed by such holders; (2) at the address reflected in the schedules if no proof of Claim is filed; or (3) at the addresses set forth in any written notices to the Disbursing Agent.

6.5 **Undeliverable Distributions**. If a distribution to the holder of any Claim is returned to the Disbursing Agent as undeliverable, no further distribution shall be made to such holder, and the unclaimed funds shall revert to the Lenders.

## ARTICLE VII. RELEASE AND EXCULPATION

7.1 **Binding Effect**. On the Effective Date, the terms of this Amended Plan shall be immediately effective and enforceable and shall bind all holders of Claims against or interests in the Debtors, whether or not such holders accept the Amended Plan.

7.2 **No Discharge**. Pursuant to Section 1141(d)(3) of the Bankruptcy Code, neither the Amended Plan nor confirmation of the Amended Plan shall discharge any Claim against any of the Debtors and nothing herein or in the Confirmation Order shall be deemed to discharge, release or exculpate any of the Debtors from any claims, all of which claims shall survive the confirmation and effectiveness of the Amended Plan.

7.3 **Injunction**. Except as otherwise provided in or to enforce the Amended Plan or Confirmation Order, on and after Effective Date, all persons, firms or entities who have held, currently hold, or may hold Claims or liens against or in any of the Debtors arising from these cases, are permanently enjoined from taking any of the following actions: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against or affecting the Properties or the Reorganized Debtors, on account of or in connection with or with respect to any such Claim or lien other than as contemplated by the Amended Plan; (ii) enforcing, levying, attaching, collecting or otherwise recovering by any manner or means whether directly or indirectly any judgment, award, decree or order against the Properties or the Reorganized Debtors on account of or in connection with or with respect to any such Claim or lien; or (iii) commencing or continuing in any manner or action or other proceeding of any kind against the Properties or the Reorganized Debtors on account of or in connection with or with respect to any such Claim or lien.

7.4 **Debtor Releases and Releases by Persons or Entities Receiving a Distribution from the Total Amended Plan Contributions**. As of the Effective Date and pursuant to inter alia Section 1123(b) of the Bankruptcy Code, and for good and valuable consideration, each of the Debtors and their respective Bankruptcy Estates and all persons or entities receiving distributions hereunder and payment from the Total Amended Plan Contributions fully release and discharge Mr. Fischman and the Pfeiffers from any and all claims, interests, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever relating to personal guarantees or any direct or derivative claims, asserted or assertable on behalf of any or all of the Debtors, and their respective Bankruptcy Estates, as applicable, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity or otherwise, that any or all

of the Debtors, and their respective Bankruptcy Estates could have been legally entitled to assert in its or their own rights (whether individually or collectively) arising from, in whole or in part, including, but not limited to, (i) the Project or Properties; (ii) any lending transaction relating to the Debtors or their respective Bankruptcy Estates, (iii) the Debtorsø pre-petition business affairs, including the transactions or events giving rise to, any claim or equity interest that is treated in the Amended Plan, (iv) the formulation, preparation, negotiation, dissemination, implementation, administration, confirmation or consummation of the Amended Plan (or the Properties to be distributed under the Amended Plan), any contract, instrument, release or other agreement or document related to any of the Debtors or the Chapter 11 Cases, or (v) any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date relating to any of the Debtors, their Properties, Project, the Chapter 11 Cases or the Amended Plan.  The releases shall not include criminal conduct, gross negligence, willful misconduct, fraud and *ultra vires* acts.

7.5 **Exculpation**. Effective as of the Effective Date, to the fullest extent permissible under applicable law, the Debtors and their counsel and Disbursing Agent (together with their respective members, managers, officers, directors, agents and legal representatives) are hereby released and exculpated from any claim, obligation, cause of action or liability for any act taken or omission occurring on or after the commencement of the Chapter 11 Cases related to the Debtors or their Bankruptcy Estates, including but not limited to (i) formulating, preparing, disseminating, implementing, confirming, consummating or administering the Amended Plan (including soliciting acceptances or rejections thereof); (ii) the submission of the Disclosure Statement or any contract, instrument, release or other agreement or document entered into or any action taken or omitted to be taken during the administration of these Chapter 11 Cases or in

connection with the Amended Plan; and (iii) any distributions made pursuant to the Amended Plan. The releases shall not include criminal conduct, gross negligence, willful misconduct, fraud and *ultra vires* acts. No attorneys shall be released from any acts of malpractice.

## ARTICLE VIII.  MISCELLANEOUS PROVISIONS

8.1    **Orders in Aid of Consummation**.  Pursuant to applicable provisions of the Bankruptcy Code, the Bankruptcy Court may enter order(s), as warranted in aid of implementation the Amended Plan.

8.2    **Compliance with Tax Requirements**.  The Debtors shall comply with all reporting requirements imposed by federal or state law; provided, however, that the transfer of the Properties and other Assets shall not be subject to any Transfer Taxes as provided under Section 1146(a) of the Bankruptcy Code.

8.3    **Modification**.  The Amended Plan may be further amended or modified on motion prior to substantial consummation in accordance with 11 U.S.C. §1127.

8.4    **Filing of Additional Documents**.  The Disbursing Agent retains the right to file with the Bankruptcy Court any documents as may be necessary or appropriate to effectuate and implement the Amended Plan.

8.5    **Successors and Assigns**.  The rights, benefits and obligations of any Entity named or referred to in the Amended Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assigns.

8.6    **Governing Law.**  The Amended Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York.

## ARTICLE IX.  RETENTION OF JURISDICTION

**9.1   Retention of Jurisdiction**. The Bankruptcy Court shall retain jurisdiction until the bankruptcy cases are closed to adjudicate the following matters:

9.1.1.   Ensure that the Amended Plan is consummated;

9.1.2.   Resolve all matters arising under or relating to the Amended Plan, including, without limitation, the enforcement, interpretation thereof, and any disputes relating to the sale and transfer of the Properties;

9.1.3.   Allow, disallow, determine, liquidate, classify or establish the priority, secured or unsecured status of any Claim;

9.1.4.   Grant or deny any applications for allowance of Professional Fee Claims authorized pursuant to the Bankruptcy Code;

9.1.5.   Decide or otherwise resolve any and all applications, motions, adversary proceedings, contested or litigated matters, and any other matters or grant or deny any applications involving the Debtors that may be pending on the Effective Date;

9.1.6.   Enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Amended Plan and all contracts, instruments and other agreements or documents created in connection with the Amended Plan or to enforce all orders, judgments, injunctions, and rulings entered in connection with the bankruptcy cases;

9.1.7.   Issue any orders or take such other actions as may be necessary or appropriate to restrain interference by any person or Entity with consummation or enforcement of the Amended Plan; and

9.1.8.   Enter an Order or Final Decree concluding the bankruptcy cases.

## ARTICLE X. CLOSING THE CASES

**10.1   Timetable for Achieving Substantial Consummation.**  In compliance with Local Rule 3021(a), within fourteen (14) days after the entry of the Confirmation Order, the Debtors shall file with the Court, on notice of presentment, a proposed Order with the timetable for steps for achieving substantial consummation in these cases and the entry of a final decree, including claims resolution and any possible litigation.

10.2    **Bankruptcy Fees**.  All Bankruptcy Fees payable to the Office of the United States Trustee shall be paid until the actual closing of the bankruptcy cases.

10.3    **Post-Confirmation Reporting**.    The Debtors shall file reports with the Bankruptcy Court on a quarterly basis, reflecting disbursements made by or on behalf of the Debtors.  The reports shall be filed by the twentieth day after the conclusion of each such period until the entry of a Final Decree closing these bankruptcy cases.

10.4    **Closing the Cases**.  In compliance with Local Rule 3022-1, the Disbursing Agent shall move for the entry of a Final Decree closing these bankruptcy cases within fourteen (14) days following substantial consummation of the Amended Plan.

Dated: New York, New York
        December 10, 2020

<div style="margin-left:40%">

GOLDBERG WEPRIN FINKEL
GOLDSTEIN LLP
*Attorneys for 4202 Partners LLC*
1501 Broadway 22nd Floor
New York, New York
(212) 221-5700

By:    /s/ Kevin J. Nash
        Kevin J. Nash
</div>

NUTOVIC & ASSOCIATES

<div style="margin-left:40%">

*Attorneys for 4218 Partners LLC and
175 Pulaski RLM LLC*
261 Madison Avenue, 26th Floor
New York, New York 10016
(212) 421-9100

By:    /s/ Isaac Nutovic
        Isaac Nutovic
</div>

ZEICHNER ELLMAN & KRAUSE LLP
*Attorneys for 4202 Ki Tov LLC*
1211 Avenue of the Americas
New York, New York 10036
(212) 826-5317

By:      /s/ Nathan Schwed
         Nathan Schwed


/s/ Joseph Fischman
Joseph Fischman

/s/ Dina Krausz
Dina Krausz

/s/ Samuel ȯShabsiȯ Pfeiffer
Samuel ȯShabsiȯ Pfeiffer